[Civ. No. 20756. First Dist., Div. Two. Oct. 21, 1963.]

JOSEPHINE MAHONEY et al., Plaintiffs and Appellants, v. HERCULES POWDER COMPANY, Defendant and Respondent; INDUSTRIAL INDEMNITY COMPANY, Intervener and Appellant.

Lewis & Stein and Herbert Chamberlin for Plaintiffs and Appellants.

William J. Connolly for Intervener and Appellant.

Pillsbury, Madison & Sutro, Eugene M. Prince, John B. Bates, Noble K. Gregory and James F. Kirkham for Defendant and Respondent.

AGEE, J.—Thomas Mahoney died on January 13, 1956, as the result of injuries received on December 15, 1955, when an overhanging boulder dropped on him from the roof of a tunnel under construction. His widow and two daughters brought this action for damages for his death.

Defendant is the manufacturer of both the dynamite and the blasting caps used in holing out the tunnel. These caps are designed to cause a series of explosions at fixed intervals. Plaintiffs allege that defendant so negligently made said caps that they misfunctioned when used and, by reason thereof, set off a blast in one single explosion which was so intense that it caused said boulder to become loosened and dislodged.

The jury returned a verdict in favor of defendant and plaintiffs have appealed from the judgment entered thereon. The main issue before us is whether the trial court erred in refusing to instruct on the doctrine of res ipsa loquitur. Plaintiffs' proposed instruction thereon* is in the lan-

*This instruction is as follows: ''One of the questions for you to decide in this case is whether the accident involved occurred under the following circumstances:

''First, that it is the kind of accident which ordinarily does not occur in the absence of someone's negligence;

''Second, that it was caused by an agency or instrumentality in the exclusive control of the defendant originally, and which was not mis-

guage of BAJI 206A and 206 and is correct as to form. (See 1962 Pocket Parts.)

The sufficiency of the evidentiary basis for the instruction is governed by the well-established rule that the evidence must be viewed in the light most favorable to the party offering the instruction. (*Wolfsmith* v. *Marsh* (1959) 51 Cal.2d 832, 833, fn. [337 P.2d 70, 82 A.L.R.2d 1257].)

Mahoney worked as foreman on the day shift for the contractor boring the tunnel. The tunnel was about 8 feet high and 6 feet-plus wide. By December 15, 1955, it had reached a point about 1,200 feet from the portal.

The first step in the blasting operation consists of drilling a number of holes about 6 feet deep into the face of the tunnel; next, a "primer," which consists of a stick of dynamite to which a blasting cap has been attached, is inserted into each hole; more sticks of dynamite are then pushed in behind the primer and tamped down with a wooden rod in order to make a compact load or charge.

The caps are constructed so as to detonate the dynamite when activated by an electric current. Each cap bears a number and an identifying color to correspond with that number. Each has a fixed firing or delaying time after being activated.

handled or otherwise changed after defendant relinquished control; and

"Third, that the accident was not due to any voluntary action or contribution on the part of the deceased.

"If, and only in the event that you should find all these conditions to exist, you are instructed as follows.

"From the happening of the accident involved in this case, an inference arises that a proximate cause of the occurrence was some negligent conduct on the part of the defendant. That inference is a form of evidence and unless there is contrary evidence sufficient to meet or balance it, the jury should find in accordance with the inference.

"When there is any evidence to the contrary, you must weigh all of the evidence bearing upon the issue of defendant's negligence. If the evidence tending to prove that the accident was caused by a failure of the defendant to exercise the care required of it has greater weight than the evidence to the contrary, you will find in favor of the plaintiffs on that issue.

"In order to meet or balance the inference of negligence, the defendant must present evidence to show either (1) a satisfactory explanation of the accident, that is, a definite cause for the accident, in which there is no negligence on the part of the defendant, or (2) such care on the defendant's part as leads to the conclusion that the accident did not happen because of want of care by him, but was due to some other cause, although the exact cause may be unknown. If such evidence has at least as much convincing force as the inference and other evidence, if any, supporting the inference, then you will find against the plaintiffs on that issue."

Numbers 1 through 7 were used on this job. The delaying time for number 1 is .8 of a second, for number 2 is 1.4 seconds, for number 3 is 2.2 seconds, for number 4 is 2.9 seconds, for number 5 is 3.7 seconds, for number 6 is 4.5 seconds, and for number 7 is 5.3 seconds.

After a round of blasting, the gases are sucked out of the tunnel by air. The crew then removes the blasted material or debris and the loose or cracked rocks protruding from the roof. Then the tunnel is timbered up to within about a foot of the newly created face. The timbering consists of planks along the roof of the tunnel held up at 5-foot intervals by upright side-posts and three-piece arches.

The boulder which fell on Mahoney was in a portion of the tunnel which had previously been protected by timbering. It was solidly imbedded and could not be removed without blasting. The lower portion was therefore chiseled away with a jack hammer so that it did not interfere with the timbers.

On December 13, 1955, the graveyard shift—midnight to 8 a.m.—drilled holes, loaded them, and set off the blast. Instead of going off in a series of seven separate explosions, all of the charges went off at one time. The force of this single explosion caused seven or eight sets of timbering to be knocked down. The day shift retimbered this area, which included the area where said boulder was. The boulder was tested and found to be still solidly imbedded.

On December 15, 1955, about 5 or 6 a.m., the graveyard shift again drilled holes, loaded up and set off the charges. Again they all exploded at one time and again the force of the explosion blew out approximately 40 feet of timbering, including the timbering which protected against said boulder.

When Mahoney and his crew arrived at 8 a.m., they started to remove the debris and to retimber. Later in the morning, while engaged in this work, decedent stooped over to pick up a block of wood lying on the floor of the tunnel; it was at this moment that the boulder fell upon him.

On the Monday or Tuesday following the Thursday on which the accident occurred, two representatives of Hercules arrived at the tunnel and directed the making of a test. Fourteen holes were drilled 30 inches apart. In the actual work, the holes had been drilled 18 to 24 inches apart. Ten of the holes were loaded in the same manner as before. Blasting caps numbered 1 through 5 were used, so that there should

have been five separate explosions. Instead there were only two.

Then the remaining four holes were loaded with caps numbered 1, 2, 3, and 4. Instead of four separate explosions there were only two.

An expert witness explained the function of the type of delayer mechanism in the blasting caps. He testified that the objective is "to remove the rock with the least possible injury to the tunnel, ... The very fact that the dynamite doesn't go off all at once, of course, reduces the total shock to the tunnel by just the number of times that you divide the total shock."

In response to a hypothetical question which described the circumstances under which the blast of December 15, 1955, occurred, the witness explained that the round fired by the number 1 caps would send out concussion waves to the other caps; that these waves would cause the other caps to fire prematurely if the detonating powder in the base of the caps was too sensitive; that this sensitivity could be caused by the presence of either metallic impurities or moisture in the detonating powder; that a properly manufactured cap would not have contained such impurities or moisture, nor would it have misfunctioned as did the caps in question.

The caps manufactured by defendant were sold through dealers, in this case the Golden West Quarry. It in turn sold the caps to the tunnel contractor. Upon delivery to the job site, the caps were kept in a steel magazine under lock and key. This magazine is located outside the tunnel, about 200 feet from the portal.

The caps are packaged by the defendant in cardboard cartons. The cartons are then packed into a fiber case. These cartons are about 5 inches by 6 or 7 inches in size. Each contains only one size of cap. A cap is about the size of an ordinary lead pencil in diameter. It is enclosed in a hermetically sealed metal casing. They vary in length from 2 inches for a number 1 cap to 3 1/2 inches for a number 7 cap.

The dynamite is contained in moisture-proof "sticks" which are 8 inches in length and 1 inch in diameter. Defendant packs these in heavy cardboard cartons containing 110 or 120 sticks.

The powder man unlocks the magazine and takes out the sticks of dynamite and the delayer caps as needed. He inserts a cap into the end of a stick and thus makes it into a "primer." He is told by the miners exactly how many of these primers to make up and what number caps to use. He

does this work outside of the tunnel and then delivers the primers and the approximate number of sticks needed to the site of the next blasting. After the miners have inserted the primers and the necessary number of sticks into the holes, the powder man returns any sticks left over to the magazine.

The res ipsa loquitur instruction requested by plaintiffs makes it clear to the jury that *all three* of the following conditions must be found to exist before the doctrine can be applied: ''First, that it is the kind of accident which ordinarily does not occur in the absence of someone's negligence; Second, that it is caused by an agency or instrumentality in the exclusive control of the defendant originally, and which was not mishandled or otherwise changed after defendant relinquished control; and Third, that the accident was not due to any voluntary action or contribution on the part of the deceased.

*''If,* and *only in the event* that you should find all these conditions to exist, you are instructed [that the doctrine is applicable].'' (Italics ours.)

We are of the opinion that the evidence, when viewed in the light most favorable to plaintiffs, is sufficient to support a finding that each of the foregoing conditions did exist in this case.

First, there is substantial evidence that, instead of causing a series of comparatively small, staggered explosions, defendant's ''delayer'' caps misfunctioned and caused a violent simultaneous blast that wrecked 40 feet of the tunnel, including the timbering, and loosened a boulder which had theretofore been solidly imbedded and protected against by timbering, thereby causing the boulder to drop on Mahoney later that morning; that this misfunctioning of the caps does not ordinarily occur in the absence of negligence in their manufacture; that there had been no such misfunctioning prior to the simultaneous blastings noted above.

Second, there is substantial evidence that the ''delayer'' caps were in the exclusive control of the defendant originally and were not mishandled or otherwise changed after defendant relinquished control of them.

Third, there is substantial evidence that the accident was not due to any voluntary action or contribution on the part of Mahoney.

The instruction requested by plaintiffs left it to the jury to determine, *as a question of fact,* whether the foregoing three

conditions existed. It did not direct the application of the res ipsa loquitur doctrine as a matter of law.

In the instant case, *if* the jury had found the facts to be as stated in the three conditions, then plaintiffs were entitled to an inference that the simultaneous blast complained of was proximately caused by defendant's negligence in the manufacture of the caps that were used. █ This inference is a species of evidence to be weighed and considered with all other evidence in the case on the issue of defendant's negligence.

█ Relying upon *Davis* v. *Memorial Hospital,* 58 Cal.2d 815 [26 Cal.Rptr. 633, 376 P.2d 561], defendant contends that the first condition is incomplete and that the following words which are underlined should be added: "First, that it is the kind of accident which ordinarily does not occur in the absence of someone's negligence and that 'someone' is probably the defendant."

However, the proposed instruction in *Davis, supra,* is also based upon the language of BAJI 206A and 206. It is practically identical in every respect with the instruction proposed in the instant case. There, the refusal of the trial court to give the proposed instruction was held to be reversible error.

Chief Justice Gibson stated in the opinion that "whether an injury was caused by the conduct of the defendant *rather than by the acts of someone else* ... must be left to the jury under proper instructions . . . Obviously the requested instructions would have made res ipsa loquitur applicable solely on a conditional basis; certain findings of fact would have been necessary before the inference afforded by the doctrine could arise, including a finding that the injury to plaintiff 'was caused by an agency or instrumentality in the exclusive control of the defendant.' [Second condition.] These words, although general in character, would have directed the jury to determine whether the giving of the enema was the cause of the abscess *since this was the only possible cause mentioned which was attributable to defendant."* (Italics ours.)

Likewise, the only possible cause of the accident in the instant case, which was attributable to the defendant, was the defectiveness of the delayer caps used in the explosion in question.

Therefore, as stated in *Davis, supra,* "it is unlikely that the jury would have been misled by the requested instructions, and the trial court did not refuse them because of a

lack of specificity but because of its mistaken belief that res ipsa loquitur could not apply under any view of the evidence.''

■ With regard to the second condition, defendant contends that plaintiffs did not establish ''that the condition of the blasting caps remained unchanged and that those caps were not misused after they left the possession of [defendant] Hercules.''

The evidence here shows without dispute that the caps were manufactured by defendant and were contained in hermetically sealed metal casings. They were so constructed that any tampering or damage to the casing would be readily apparent. The powder man was the only person to actually have any direct contact with these caps after they left defendant's plant. He testified as to the manner in which he inserted the caps into the sticks of dynamite in making up the necessary number of primers. There was nothing in his testimony to indicate that the caps were ''mishandled or otherwise changed after defendant relinquished control'' of them.

In our opinion, whether plaintiffs affirmatively established the existence of the elements contained in the second condition presented a question of fact which should have been submitted to the jury. (*Borenkraut* v. *Whitten,* 56 Cal.2d 538, 546 [15 Cal.Rptr. 635, 364 P.2d 467].) As stated in *Zentz* v. *Coca Cola Bottling Co.,* 39 Cal.2d 436, 447 [247 P.2d 344]: ''It is not necessary that plaintiff eliminate every remote possibility of injury to the bottle after defendant relinquished control, . . .''

■ Defendant finally contends that plaintiffs failed to establish the third condition, i.e., that the accident was not due to any voluntary action or contribution on the part of Mahoney.

■ Such ''action or contribution,'' as used in this condition, means an act directly connected with the use or operation of the instrumentality which is alleged to have been the cause of the accident. It should not be confused with the issue of contributory negligence, although the same ''action or contribution'' which precludes the application of the res ipsa loquitur doctrine may or may not constitute contributory negligence on the part of the injured person. (*Gillespie* v. *Chevy Chase Golf Club,* 187 Cal.App.2d 52, 54-55 [9 Cal. Rptr. 437]; *Guerrero* v. *Westgate Lumber Co.,* 164 Cal. App.2d 612, 616 [331 P.2d 107]; *Dunn* v. *Vogel Chevrolet Co.,* 168 Cal.App.2d 117, 120-121 [335 P.2d 492]; *Hercules*

*Powder Co.* v. *Automatic Sprinkler Corp.,* 151 Cal.App.2d 387, 396 [311 P.2d 907].)

In the instant case, the contention of defendant is that "Mahoney's act of going into the unprotected portion of the tunnel necessarily contributed to his accident." But this "action or contribution" on Mahoney's part had nothing to do with the setting off of the simultaneous explosion. This was done by the crew on the graveyard shift and Mahoney was not even there. He never had anything to do with the use of the blasting caps which are alleged to have been negligently manufactured.

Whether Mahoney was guilty of contributory negligence is an entirely separate issue. The jury was instructed that any negligence on his part which proximately caused or proximately contributed to cause his injuries and subsequent death would preclude a recovery by plaintiffs.

In *Guerrero* v. *Westgate Lumber Co., supra,* a truck had been loaded with logs. Plaintiff was about to pass a chain under the truck in order to help secure the load, when the top log rolled off and injured him. The court stated, at page 616: "The evidence does not show that appellant [plaintiff] had pulled upon or moved the chain over the load or that any action on his part caused the accident. Whether or not he was guilty of contributory negligence in going alongside of the load before it was bound is a separate issue and is not to be 'confused with the problem of contributory negligence, as to which defendant has the burden of proof.' " (Quoting from *Zentz* v. *Coca Cola Bottling Co.,* 39 Cal.2d 436 [247 P.2d 344].)

In the instant case, it was error to refuse to give the requested instruction on res ipsa loquitur and, in our opinion, such error was prejudicial.

The trial court gave two "mere happening of the accident" instructions. The first is as follows: "The mere fact that an accident happened, or a suit has been filed, considered alone, will not support a verdict for any sum." The second is as follows: "Now, the mere fact that an accident happened, considered alone, does not prove that it was caused by the negligence of anyone."

It is error to give such instructions where the doctrine of res ipsa loquitur applies as a matter of law. (*Guerra* v. *Handlery Hotels, Inc.,* 53 Cal.2d 266, 271 [1 Cal.Rptr. 330, 347 P.2d 674].) However, the application of the doctrine in the instant case depends upon whether the jury finds from the evidence that the three conditions stated in the

requested instruction exist; on a retrial, any instruction on the effect of the ''mere happening of an accident'' should be drafted with this in mind. (Cf. *Shaw* v. *Pacific Greyhound Lines,* 50 Cal.2d 153, 156-157 [323 P.2d 391].)

Judgment reversed.

Shoemaker, P. J., concurred.

A petition for a rehearing was denied November 6, 1963.