[L.A. No. 30479. In Bank. Jan. 23, 1976.]

GERTRUDE CHERN, Plaintiff and Appellant, v.
BANK OF AMERICA, Defendant and Respondent.

### Counsel

Palley & Schwartz, Michael R. Palley, Lawrence I. Schwartz and Raymond T. Bonner for Plaintiff and Appellant.

Robert H. Fabian, Harris B. Taylor and Ullar Vitsut for Defendant and Respondent.

### Opinion

**RICHARDSON, J.**—Plaintiff Gertrude Chern brought an action on behalf of herself and a class of all persons similarly situated against defendant Bank of America for breach of contract, damages, and injunctive relief. The trial court granted summary judgment in favor of defendant bank on all counts, dismissed plaintiff's class action, and awarded costs to defendant. Plaintiff appeals. We have concluded that summary judgment was proper as to plaintiff's damage claims, but not as to plaintiff's action for injunctive relief.

According to plaintiff's complaint and declarations filed herein, in June 1970 plaintiff telephoned the Santa Maria branch of defendant bank to arrange a loan of $5,000. She was told at that time that the rate of interest on this loan would be 9 percent. She then went to the bank where she was shown a promissory note for $5,000 "with interest . . . at the rate of 9 per cent per annum . . . ." At the same time, she was shown a "Federal Truth in Lending Statement" which set forth the interest on the $5,000 loan as an annual percentage rate of 9¼ percent. Plaintiff pointed out the discrepancy to defendant's employee and was advised that defendant computed its interest in a different manner than that required for federal disclosure law purposes. Defendant's method for calculating interest was briefly explained to plaintiff who, although she protested that the method was dishonest, nevertheless executed the various forms.

The procedure of computing defendant's interest, the "365/360 method," is substantially as follows. An interest rate is selected and divided by 360 instead of 365 to determine the rate per day. This daily rate is multiplied by the number of days that the loan is outstanding. The result is the amount of interest the borrower must pay. To compute the amount due for a loan taken for a full 365-day year, this daily rate would, of course, be multiplied by 365. Under this method of computation, a *stated* interest rate of 9 percent calculated on the basis of a 360-day year, as in the present case, results in daily interest of .0025 percent (.09/360) and an actual annual rate of 9.125 percent (.0025 x 365). In contrast, if the daily rate applied is calculated on a 365-day year, a 9 percent annual rate results in approximately .00247 percent per day (.09/365). Thus, the shorter the period of time used in arriving at the stated interest rate, the higher the actual rate of daily interest and the greater the disparity between the stated rate and the actual annual interest rate. We note that under the federal Truth in Lending Act (15 U.S.C. § 1601 et seq.), which requires disclosure of interest rates to borrowers, interest is to be computed on a 365-day year and rounded off to the nearest quarter of a percent (12 C.F.R. § 226.5); in the instant case, the parties agree that the interest rate under this method would be 9¼ percent.

In April 1971 plaintiff filed an action on behalf of herself and others similarly situated. Her first amended complaint, although containing six counts, was predicated upon essentially two theories: (1) That defendant breached its loan contract with her and all other class members by charging a higher annual interest rate than the 9 percent specified on the

promissory note; and (2) that defendant's method of computing interest rates is misleading within the meaning of Business and Professions Code section 17500. She alleged damages to the class in excess of $100,000 and individual damages of 36 cents; she also asked for injunctive relief.

After answering the complaint and asserting various affirmative defenses, defendant, in December 1972, filed a motion for summary judgment. The motion was based on the pleadings and the declarations of counsel and of the bank employee who had negotiated the loan. Summary judgment was granted in favor of defendant, apparently on the ground that plaintiff's prior knowledge of the discrepancies in the rates quoted to her precluded her action. Subsequently the entire complaint was dismissed and costs were awarded to defendant.

## 1. *Collateral Estoppel*

Preliminarily, defendant asserts that plaintiff is estopped to pursue her claims because of a prior summary judgment entered against her in a suit raising identical issues brought against a different bank. (*Chern* v. *Security Pacific National Bank*, 2 Civ. 42725, hg. den. Jan. 23, 1975.) Under the doctrine of collateral estoppel, a prior judicial determination of a legal issue with respect to specific facts may be given effect in a subsequent action between the same parties. (*Todhunter* v. *Smith* (1934) 219 Cal. 690, 695 [28 P.2d 916]; *Pacific Maritime Assn.* v. *California Unemp. Ins. Appeals Board* (1965) 236 Cal.App.2d 325, 332 [45 Cal.Rptr. 892]; *Braye* v. *Jones* (1954) 129 Cal.App.2d 827, 830; Rest., Judgments, § 70; James, Civil Procedure (1965) § 11.22, pp. 583-584.) In *Bernhard* v. *Bank of America* (1942) 19 Cal.2d 807, 813 [122 P.2d 892], we held that this principle may be applied in favor of a party who was not involved in the prior action. Defendant contends that under the *Bernhard* rule, plaintiff is precluded from raising in this present action any of the issues litigated in her prior action.

In the present case, however, estoppel is asserted on the basis of representations made by a different defendant in a different transaction than that complained of in the prior suit. While we find no cases on point, the authorities suggest that "where the subsequent action involves parallel facts, but a different historical transaction, the application of the law to the facts is not subject to collateral estoppel." (*Developments-Res Judicata* (1952) 65 Harv.L.Rev. 818, 843; see Rest., Judgments, § 70, com. e; 4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 216, pp. 3351-3352; Scott, *Collateral Estoppel by Judgment* (1942) 56 Harv.L.Rev.

1, 10.) ■ In general it may be said that rulings of law, divorced from the specific facts to which they were applied, are not binding under principles of res judicata. (James, Civil Procedure, *supra*, § 11.22, pp. 583-584; see *Commissioner* v. *Sunnen* (1948) 333 U.S. 591, 597-599 [92 L.Ed. 898, 905-907, 68 S.Ct. 715] [collateral estoppel effect denied as to suit for income tax between same parties raising same legal issue but in different years]; *Grandview Dairy* v. *Jones* (2d Cir. 1946) 157 F.2d 5, 10, cert. den., 329 U.S. 787 [91 L.Ed. 675, 67 S.Ct. 355] [question of law redecided by War Food Administration as to subsequent, identical facts between the same parties].) ■ As will appear, a principal issue in the instant case is essentially a legal one, namely, whether defendant's alleged practice constitutes false or misleading advertising under California law. No material dispute exists concerning the relevant facts in the present case. In contrast, the estoppel cases relied on by defendant, including *Bernhard,* involved attempts to relitigate *factual* issues arising out of the same subject matter or transaction as the prior suit. The difference is significant.

We acknowledge, further, a sound judicial policy against applying collateral estoppel in cases which concern matters of important public interest. In *Louis Stores, Inc.* v. *Department of Alcoholic Beverage Control* (1962) 57 Cal.2d 749 [22 Cal.Rptr. 14, 371 P.2d 758], for example, we declined to give estoppel effect to bar an administrative agency from relitigating the issue of whether a certain practice by a defendant constituted sufficient cause to revoke a liquor license, noting that the statute authorizing the revocation of licenses "concerns the public interest in an industry requiring close supervisions." (*Id.,* at p. 758; see also, *Panhandle Eastern Pipe L. Co.* v. *Federal Power Com'n* (3d Cir. 1956) 236 F.2d 289, 292; *People* v. *Haring* (1955) 286 App.Div. 676 [146 N.Y.S.2d 151]; 2 Davis, Administrative Law Treatise (1958) § 18.03, pp. 558-559.)

The California Legislature has evidenced a strong interest in protecting the public through its comprehensive scheme of banking and financial regulations. (See, e.g., Fin. Code, § 1 et seq.; Cal. U. Com. Code, § 4101 et seq.; note also the extensive federal legislation and regulations; e.g., 15 U.S.C. § 1601 et seq.; 12 C.F.R. § 1.1 et seq.) The laws proscribing false advertising and deceptive practices provide for both civil and criminal liability. (Bus. & Prof. Code, §§ 17531.9, 17534, 17534.5, 17535.5, 17536, 17568.) Several state and local officers as well as private individuals are specifically authorized to pursue injunctive relief for violations of these laws (Bus. & Prof. Code, § 17535) and special

penalties are imposed for violating any injunction so obtained. (Bus. & Prof. Code, § 17535.5.) In the last several years, the area of false advertising has seen a proliferation of new protective legislation enlarging both the practices proscribed and the remedies available against these practices. (See, e.g., Bus. & Prof. Code, §§ 17500.3, 17500.5, 17507, 17508, 17510-17510.7, 17530.5, 17531.6-17531.9, 17533.8, 17534.5, 17535.5-17540.10, 17569-17572.) Given the quality and intensity of the public interest involved, a reexamination of the legal significance of recurring factual events in which the same plaintiff is involved should not be foreclosed under collateral estoppel principles. For this reason and the other reasons hereinabove discussed, we decide the legal issues raised by plaintiff in the present suit.

### 2. Damages

As noted, plaintiff sought to recover damages on two theories, namely, breach of contract and the making of false or misleading statements (Bus. & Prof. Code, § 17500). In reviewing the summary judgment granted in this case, we apply pre-1974 law since the judgment was entered before January 1, 1974, the effective date of the 1973 Summary Judgment Act. Under well established rules governing summary judgment motions, the affidavits of the moving party are to be strictly construed and those of the opponent liberally construed. (*Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785].) Nevertheless, a party opposing a motion for summary judgment which is supported by affidavits or declarations sufficient to sustain the motion, has the burden of showing that triable issues of fact exist. The purpose of the summary procedure is to penetrate through evasive language and adept pleading and ascertain the existence or absence of triable issues. (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 20 [112 Cal.Rptr. 786, 520 P.2d 10] [applying pre-1974 law]; *Coyne* v. *Krempels* (1950) 36 Cal.2d 257, 262-263 [223 P.2d 244].)

Defendant's motion herein was supported by uncontradicted evidence that plaintiff knew at the time she entered into the loan contract in question that the interest rate on her loan was based on the 365/360 method of calculation. Plaintiff's affidavit, concerning primarily her conversation with defendant's employee, did not dispute the fact that she knew and understood defendant's method of calculation before she executed the note in question. This prior knowledge defeats her claim to recover damages for breach of contract, for it fully disposes of her

contention that defendant agreed to charge only 9 percent interest. None of plaintiff's allegations concerning the bank's representations at the time of the transaction, alter or vitiate her knowledge of, or consent to, the terms of the contract. (*Chicago Bridge etc. Co.* v. *Ind. Acc. Com.* (1964) 226 Cal.App.2d 309, 316 [38 Cal.Rptr. 57]; *Purdy* v. *Buffums, Inc.* (1928) 95 Cal.App. 299, 301 [272 P. 770]; 1 Witkin, Summary of Cal. Law (8th ed. 1973) § 138, p. 134.)

Relying on the parol evidence rule, plaintiff contends that in ascertaining the terms of the contract resort may be had only to the promissory note, and that extrinsic evidence cannot be used to explain the note's unambiguous interest rate of "9 per cent per annum." The assertion lacks merit. Plaintiff signed a Truth in Lending Statement at the same time she executed the promissory note. This statement disclosed that she would pay an interest rate of 9¼ percent. ▆ It is well established that ". . . separate written instruments between the same parties and relating to the same subject matter . . . are to be construed together as one transaction . . . ." (*Lynch* v. *Bank of America N. T. & S. Assn.* (1934) 2 Cal.App.2d 214, 223 [37 P.2d 716]; see *Freedland* v. *Greco* (1955) 45 Cal.2d 462, 468 [289 P.2d 463]; *Symonds* v. *Sherman* (1933) 219 Cal. 249, 253 [26 P.2d 293]; *Roberts* v. *Reynolds* (1963) 212 Cal.App.2d 818, 824 [28 Cal.Rptr. 261]; *Harm* v. *Frasher* (1960) 181 Cal.App.2d 405, 414 [5 Cal.Rptr. 367]; Civ. Code, § 1642.) ▆ It follows that the parol evidence rule does not bar consideration of this document in ascertaining the terms of the parties' agreement. Taken together, the documents clearly indicate that plaintiff was well aware of the basis on which interest was computed on her loan.

Because we conclude that summary judgment is appropriate against plaintiff on her breach of contract claim, the class action count alleging a similar claim must be dismissed for want of a proper representative. "The cases uniformly hold that a plaintiff seeking to maintain a class action must be a member of the class he claims to represent. [Citations.]" (*La Sala* v. *American Sav. & Loan Assn.* (1971) 5 Cal.3d 864, 875 [97 Cal.Rptr. 849, 489 P.2d 1113].) Plaintiff contends otherwise, and argues that she should be permitted to represent the class despite her own inability to prevail on the merits. Yet the cases relied upon by plaintiff are inapposite for, among other things, in each of those cases (e.g., *Scott* v. *City of Indian Wells* (1972) 6 Cal.3d 541 [99 Cal.Rptr. 745, 492 P.2d 1137]; *La Sala* v. *American Sav. & Loan Assn., supra; Huff* v. *N. D. Cass Company of Alabama* (5th Cir. 1973) 485 F.2d 710) the record clearly indicated that at least some members of the alleged class survived as

continuing parties plaintiff and would be entitled to recover upon proof of the complaint's allegations. In the instant case, on the other hand, plaintiff fails to allege that *anyone* was actually misled by defendant's conduct and thereby induced to enter into a loan transaction with defendant. Indeed, the declarations filed herein, which are undisputed, indicate that it was defendant's practice to present a Truth in Lending Statement to all loan customers. Because no parties are before us who claim to have been misled we cannot decide the issue of the rights of such individuals that might possibly exist. In such a case, any policy against duplicative litigation (*Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 714-715 [63 Cal.Rptr. 724, 433 P.2d 732]) is outweighed by this court's policy against rendering advisory opinions. (*People* ex rel. *Lynch* v. *Superior Court* (1970) 1 Cal.3d 910, 912 [83 Cal.Rptr. 670, 464 P.2d 126].) We conclude that the trial court properly dismissed the class action damage count.

■ Plaintiff's cause of action to recover damages for false or misleading statements (Bus. & Prof. Code, § 17500) was likewise properly dismissed. The applicable statutes do not authorize recovery of damages by private individuals. Private relief is limited to the filing of actions for an injunction (*id.,* § 17535); and civil penalties are recoverable only by specified *public* officers (*id.,* §§ 17535.5, 17536).

### 3. *Injunctive Relief*

■ Section 17500 of the Business and Professions Code makes it unlawful "for any person, .·. . with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate . . . before the public . . . any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any such person, . . . to so make or disseminate . . . any such statement as part of a plan or scheme with the intent not to sell such personal property or services, . . . so advertised at the price stated therein, or as so advertised." As noted above, violations of this section are enforceable by injunction. (Bus. & Prof. Code, § 17535.)

Whether a loan of money is a sale or a service, the language of section 17500 is sufficiently broad to include false or misleading statements

made to the public by banking institutions in connection with their loans. Under this section, a statement is false or misleading if members of the public are likely to be deceived. Intent of the disseminator and knowledge of the customer are both irrelevant. Referring to both section 17500 and Civil Code section 3369, it has been said: "The statute affords protection against the probability or likelihood as well as the actuality of deception or confusion. [Citation omitted.]" (*Payne* v. *United California Bank* (1972) 23 Cal.App.3d 850, 856 [100 Cal.Rptr. 672]; see also *People ex rel. Mosk* v. *Lynam* (1967) 253 Cal.App.2d 959, 966 [61 Cal.Rptr. 800]; *Audio Fidelity, Inc.* v. *High Fidelity Recordings, Inc.* (9th Cir. 1960) 283 F.2d 551, 554-555.)

We agree with plaintiff that the practice of computing interest quoted as a "per annum" rate on the basis of a 360-day year is likely to deceive the public. "Per annum" means literally "by the year." (Black's Law Dict. (4th ed. 1968) p. 1292; *American Timber & Trad. Co.* v. *First Nat. Bank of Oregon* (9th Cir. 1973) 511 F.2d 980, 983, cert. den. (1975) 421 U.S. 921 [43 L.Ed.2d 789, 95 S.Ct. 1588].) As commonly understood, a year has either 365 or 366 days. (*Id.*) In the absence of evidence to the contrary, we must assume that the public is likely to understand that a "per annum" rate is an annual rate based on a 365-day calendar year. The fact that it may be "customary" business practice within the banking community to quote interest rates on the basis of a 360-day year does not necessarily establish that the practice is not misleading to the general public with whom defendant deals. Moreover, the fact that defendant may ultimately disclose the actual rate of interest in its Truth in Lending Statement does not excuse defendant's practice of quoting a lower rate in its initial dealings with potential customers. The original, lower rate may unfairly entice persons to commence loan negotiations with defendant in the expectation of obtaining that rate. Defendant offers no sound reason why it could not quote an accurate annual rate during its initial communication with its customers, rather than withhold such information until the customer has entered its premises.

We conclude that the practice of quoting as a "per annum" rate interest computed on the basis of a 360-day year is likely to mislead and deceive a bank's potential borrowers, and that if, as alleged, defendant has adopted such practice it constitutes false and misleading advertising under Business and Professions Code section 17500. Accordingly, injunctive relief should be available to restrain further conduct of this nature on defendant's part. (Bus. & Prof. Code, § 17535; Civ. Code, § 3369, subd. 2.)

We note that our conclusion regarding the impropriety of defendant's alleged practice is supported by federal regulations enacted to facilitate an informed choice between competing credit plans. (See 12 C.F.R. §§ 226.1(a)(2); 226.101(a), (b), (c).) Section 226.101(c), requires that "In response to any oral inquiry by a customer about the cost of credit, a creditor when quoting annual rates should use only those rates permitted to be used in advertisements under § 226.10 [requiring rate to be stated as an annual percentage rate]. Irrespective of the method used by the creditor to compute finance charges, the annual rate of the creditor's total finance charges should be quoted only in terms of the 'annual percentage rate.'"

The judgment is affirmed as to the first five causes of action and reversed as to the sixth cause of action, and the cause is remanded for further proceedings consistent with this opinion. The parties shall bear their own costs of appeal.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Sullivan, J., and Clark, J., concurred.