[Civ. No. 17225. Third Dist. Nov. 21, 1978.]

NILS O. BARRETT, Plaintiff and Appellant, v.
ATLAS POWDER COMPANY et al., Defendants and Respondents.

## COUNSEL

Trezza, Ithurburn, Steidlmayer & Bower and Eugene J. Davis for Plaintiff and Appellant.

Downey, Brand, Seymour & Rohwer, Jeffery H. Speich, Memering, DeMers & Ford, Claudia J. Robinson, Ericksen, Mackenroth & Arbuthnot, David E. Mackenroth, Rust & Armenis, F. Eugene Bailey, Diepenbrock, Wulff, Plant & Hannegan and James T. Freeman for Defendants and Respondents.

## OPINION

**EVANS, J.**—Plaintiff, Nils O. Barrett, sought damages for personal injuries from defendants, Atlas Powder Company, Downey Clinch, doing business as Alpha Hardware, Olin Corporation, American Cyanamid Company, and E. I. DuPont deNemours and Company, arising out of an incident in which a 30-year-old blasting cap exploded when handled by plaintiff. The defendants moved for and were granted summary judgment, and plaintiff appeals.

The facts surrounding the accident are not in dispute and indicate that on January 17, 1974, plaintiff, age 20, while at an abandoned gold mine his father had recently purchased, discovered three boxes of blasting caps. While out of the presence of his father, he detonated several of the caps by connecting them to a car battery. Plaintiff discarded one cap

which had failed to explode and picked up another; while examining a smudge mark on it, it detonated in his hand causing his injuries. The cap that exploded was found to have been manufactured in the late 1930's or early 1940's, and it is plaintiff's contention that it was manufactured by one of the following defendants: American Cyanamid Company, Atlas Powder, Olin Corporation, or DuPont. Plaintiff also asserts that Downey Clinch, doing business as Alpha Hardware, is responsible in strict liability as the retailer who originally sold the caps to a prior owner of the mine, Joe Brown, who in turn sold the mine to Red Swain from whom plaintiff's father purchased the property.

Of foundational importance to our disposition of this matter are the rules concerning summary judgment. That procedure is set forth in Code of Civil Procedure section 437c. In pertinent part that section reads, "Any party may move for summary judgment in any action . . . if it is contended that the action has no merit . . . .

"The motion shall be supported or opposed by affidavits, declarations, admissions, answers to interrogatories, depositions and matters of which judicial notice shall or may be taken.

". . . . . . . . . . . . . . . . . . .

"Supporting and opposing affidavits or declarations shall be made by any person on personal knowledge, shall set forth admissible evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

■ The basic purpose of the procedure is to eliminate evasive language and clever pleading and ascertain whether the pleading presents triable issues. The court makes its determination upon the content of the "affidavits, declarations, admissions, answers to interrogatories, depositions and matters of which judicial notice . . . may be taken." A party's pleadings may not be used to oppose the motion for summary judgment (Code Civ. Proc., § 437c; *Chesney* v. *Gresham* (1976) 64 Cal.App.3d 120, 131 [134 Cal.Rptr. 238]; *DeSuza* v. *Andersack* (1976) 63 Cal.App.3d 694, 698 [133 Cal.Rptr. 920]). ■ The party opposing a motion for summary judgment which is supported by affidavits, declarations, answers to interrogatories or depositions sufficient to sustain the motion has the affirmative duty to show that triable issues of fact exist. (*Chern* v. *Bank of America* (1976) 15 Cal.3d 866, 873 [127 Cal.Rptr. 110, 544 P.2d 1310].) ■ Equally important to our decision are the fundamental

products liability axioms that "A manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury . . . ." (*Greenman* v. *Yuba Power Products, Inc.* (1963) 59 Cal.2d 57, 62 [27 Cal.Rptr. 697, 377 P.2d 897]; *Price* v. *Shell Oil Co.* (1970) 2 Cal.3d 245, 250 [85 Cal.Rptr. 178, 466 P.2d 722]; *Cronin* v. *J. B. E. Olson Corp.* (1972) 8 Cal.3d 121, 130 [104 Cal.Rptr. 433, 501 P.2d 1153].) That rule is equally applicable to the manufacturer and the retailer. (*Vandermark* v. *Ford Motor Co.* (1964) 61 Cal.2d 256, 263 [37 Cal.Rptr. 896, 391 P.2d 168].) ■ However, to establish liability, it is not enough that the action happened, nor may liability inferences favorable to plaintiff be drawn from that fact. The plaintiff must prove by competent evidence that the product was either defective in design or manufacture or both, thus causing the injury (*Henderson* v. *Harnischfeger Corp.* (1974) 12 Cal.3d 663, 676 [117 Cal.Rptr. 1, 527 P.2d 353]), or that inadequate warning relative to use of the product was given.

■ Plaintiff asserts two products liability theories as bases for his claim that the record reveals triable issues of fact concerning liability of each defendant for plaintiff's injuries. They are the defective design and manufacture of the blasting cap and the retail sale of the allegedly defective product without warning of its defect. If either theory is supported by adequate documentation and held viable, granting the summary judgment was error. However, we fail to find merit in either contention.

After the parties had conducted extensive discovery, plaintiff, in response to defendant Alpha Hardware's interrogatory, identified his explosives expert as Oscar Margraf. Defendant also asked the plaintiff if the expert had an opinion as to the cause of the detonation. Plaintiff replied, " 'Without speaking for Mr. Margraf, it is felt that his opinion generally as to the cause of the detonation is that it was caused by the extremely unstable condition of the cap, due to its characteristics and age.' "

Six months later plaintiff, upon inquiry, failed to specify any further expert witnesses, and Mr. Margraf was deposed. The essence of his testimony was that considering the time of manufacture (the late 1930's or early 1940's), the blasting cap had been reasonably designed and was as good as could then be obtained, and that it was made of the "Best available material."

Margraf's testimony on the issue of design was not controverted directly or indirectly. However, plaintiff argues that defendants did not establish that a defect in manufacture was not the cause of the accident, and that the fact of the accident is "some evidence" of manufacturing defect. The law is to the contrary. The defect must be affirmatively established, and an inference of defect as a result of the accident is not to be drawn. (*Henderson v. Harnischfeger Corp., supra,* 12 Cal.3d 663.) The data presented in support of the motion for summary judgment dispels completely the theory of design defect. It also proves that the cap was manufactured of the best available material and that by its detonation it was destroyed, precluding any examination to determine whether or not a manufacturing flaw existed at the time it left the hands of the manufacturer which ultimately caused the detonation and injury. In essence, the plaintiff is asking that the doctrine of res ipsa loquitur be applied when considering the propriety of the order granting the motion for summary judgment. That doctrine is not applicable in any action predicated upon the theory of strict liability. (*Tresham v. Ford Motor Co.* (1969) 275 Cal.App.2d 403, 408 [79 Cal.Rptr. 883].) Moreover, the principles which plaintiff attempts to extract from *Mahoney v. Hercules Powder Co.* (1963) 221 Cal.App.2d 353, 358 [34 Cal.Rptr. 468], in which that doctrine was considered, and have us apply to the circumstances here presented, are not applicable. In that case a chain of possession and care of the explosives after they left the manufacturer's hands until their ultimate use was established so that it could be said that any problem with the explosive devices was present at the time of manufacture. Here the caps were found in a container nailed to a tree more than 30 years after leaving the place of manufacture and after ownership by at least three separate individuals. In *Mahoney,* the devices had been stored in a "steel magazine under lock and key." As such, the facts are totally distinguishable from the circumstances of *Mahoney.* There it was established that the only possible cause of the accident attributable to the defendant manufacturer was the defect in a delayer cap contained within the explosives. Plaintiff here has presented no evidence of causation except for the fact of the accident.

It is without dispute that it is beyond the power of either plaintiff or defendants to establish by examination whether or not the blasting cap was defective at the time of its manufacture.

The cases relied upon by plaintiff in support of his argument, that the fact that the detonation and the injury is circumstantial evidence that the cap was defectively manufactured, are factually inapposite. (See *Lewis* v.

*American Hoist & Derrick Co.* (1971) 20 Cal.App.3d 570 [97 Cal.Rptr. 798]; *Vandermark* v. *Ford Motor Co., supra,* 61 Cal.2d 256.)

Plaintiff asserts as a separate basis for liability the failure to adequately warn of the dangers inherent in the use of the blasting cap, but concedes that "there is no general duty to warn where the danger inherent in the product is obvious to the user." He argues that spontaneous explosion is not an inherent and obvious danger for which a warning should have been given. We reject his contention. The blasting caps, found by plaintiff more than 30 years after their manufacture and sale, were in a container not supplied by the manufacturer and were described by the expert as well designed and manufactured of the best available material. The record fails to disclose any basis for an assumption that the caps may be subject to spontaneous explosion for which warning must be given.

The defendants, by their supporting data, established that they were entitled to summary judgment; at that point it was incumbent upon the plaintiff to affirmatively show by competent evidence a triable issue of fact as to whether the labeling was in some way inadequate to warn future users. This he has failed to do. (*Henderson* v. *Harnischfeger, supra,* 12 Cal.3d 663.) The record does not contain any evidence relative to labeling or failure to warn of dangers resulting from use, aside from the arguments of counsel.

In the absence of any affirmative showing of defect in design or manufacture, plaintiff argues that liability should be imposed upon defendants, Alpha Hardware and others, for an unspecified deficiency in labeling and warning relative to use. The argument is unsupported by any specification of deficiency except that plaintiff should have been warned of the danger of spontaneous explosion of a cap after more than 30 years of unsupervised storage. To find on that state of the record that a triable issue of fact is presented is tantamount to imposition of the doctrine of absolute liability. *Daly* v. *General Motors Corp.* (1978) 20 Cal.3d 725 [144 Cal.Rptr. 380, 575 P.2d 1162], dispelled the incipient notion that strict liability is absolute liability. Plaintiff has failed to present any documentation relating to labeling or warning concerning use of the caps from which it may be determined that a triable issue is present. The defendants' presentation indicated that in the absence of countervailing documents, they are entitled to summary judgment. (*Jack* v. *Wood* (1968) 258 Cal.App.2d 639, 648 [65 Cal.Rptr. 856].)

Finally, after oral argument on the motion for summary judgment, the trial court, distressed by plaintiff's failure to file any "affidavits, declara-

tions," et cetera, continued submission of the matter for decision for 20 days to permit plaintiff to attempt to file countervailing data by which triable issues might be established. Within that time plaintiff filed an affidavit executed by Paul Dougherty, an attorney. An examination of the document reveals that Dougherty was retained by plaintiff "for the purposes of rendering an expert opinion as to whether or not a certain electric blasting cap, the remnant of which I have examined, was defective." The affidavit fails to reveal any such opinion on that subject, and absent that opinion, it is not sufficient to establish even minimally a triable issue.

Our determination that the Dougherty affidavit does not contain any facts supporting the question of a triable issue relating to either design or manufacturer, obviates the necessity of addressing the queston of his

We note in passing that plaintiff now challenges the qualifications of the expert he originally consulted and thereafter utilized by the defendants. We reject that challenge as frivolous. The witness adequately established sufficient background data to qualify as an expert capable of analyzing and commenting on the type of blasting cap here involved. (Evid. Code, § 801, subd. (b.).) ■ "The matter of the admission of expert evidence, . . . is one within the sound discretion of the trial court." (*Neal* v. *Farmers Insurance Exchange* (1978) 21 Cal.3d 910, 924 [148 Cal.Rptr. 389, 582 P.2d 980].)

We do acknowledge that the summary procedure is drastic and should be used with caution. With that admonition in mind, we have combed the record without success for competent admissible evidence of a triable issue of fact. The defendants have presented evidence sufficient to sustain a judgment in their favor, and the plaintiff has not dispelled or disputed that evidence by any showing of a triable factual dispute which should be submitted to a trier of fact. (See *Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785].)

The judgment is affirmed.

Regan, Acting P. J., and Paras, J., concurred.