[Civ. No. 60899. Second Dist., Div. One. Aug. 12, 1981.]

SUNNY B. SAATZER, Plaintiff and Appellant, v. GREGORY SMITH, Defendant and Respondent.

514

**COUNSEL**

Richards, Watson, Dreyfuss & Gershon and Gary L. Gillig for Plaintiff and Appellant.

Yusim, Cassidy, Stein & Hanger and Rick P. Lantz for Defendant and Respondent.

OPINION

LILLIE, J.—Plaintiff appeals from summary judgment entered in favor of defendant in plaintiff's action to recover damages for personal injuries allegedly sustained as the result of a physical altercation between two persons which occurred on March 21, 1976, in a bar and restaurant owned and operated by defendant while plaintiff was a customer on the premises.

Plaintiff's complaint is based on two theories: first, that defendant negligently served alcoholic beverages to the combatants (sued as Does 1 and 2) who were obviously intoxicated, and as a proximate result thereof plaintiff was injured; second, that defendant negligently failed to preserve order on the premises or to protect plaintiff from assault and battery at the hands of other customers, thereby proximately causing plaintiff's injuries.

Defendant's motion for summary judgment was supported by the deposition testimony of plaintiff and witnesses Edith McLeod and Marie Tisch and by the declaration of Howard Churchill, a bartender who was on duty at the time of the alleged altercation. In her deposition, plaintiff testified: she did not know how long the combatants were in defendant's cocktail lounge before the fight occurred; she had no reason to believe, either from what she saw or from what she was told, that defendant had furnished alcoholic beverages to them; prior to the altercation plaintiff heard no argument between any of the customers and had no reason to believe that a fight would take place; she heard "yelling and screaming" only a few seconds before the fight began, but observed no other boisterous conduct on the part of the combatants. In her deposition, Edith McLeod testified: she did not see either of the combatants drink any alcoholic beverage and had no knowledge regarding their consumption of alcohol on the night of March 21, 1976; no one ever has told her that these individuals previously were involved in fights at defendant's cocktail lounge; she first noticed that there was a fight when "the chairs and tables started moving and we looked up and saw people standing"; prior to the outbreak of the fighting McLeod had no reason to believe that any person in the lounge might attempt to start a fight.

The deposition of Marie Tisch showed: she did not see the combatants consume any alcoholic beverage nor did she observe anything that indicated they were intoxicated; she did not hear of any fight or altercation having taken place in the lounge before the night of March 21, 1976; asked when she first became aware of the fight which occurred that night, Tisch testified: "Well, I heard a noise, and looked to my left and saw a man lying on the floor on his back, he still had his glasses on; and then I looked and saw two men fighting at that table"; the bartender "went over the bar," another employee entered from the dining room and "the two of them got to the back table as fast as they could, and they broke it up. They just grabbed the guy and that was it." In his declaration, bartender Churchill stated: the altercation which led to plaintiff's injuries occurred after midnight; the lounge was "relatively full" but there were no loud voices and no arguments were taking place; no one was standing in the aisles or in any of the entrances to the lounge; while Churchill was working behind the bar he saw two men stand up at one of the tables; one man punched the other, knocking him to the floor; the fight was "sudden and spontaneous" and occurred without warning; there had been no loud words between any of the patrons nor had anyone challenged anyone else to a fight; as soon as Churchill saw the fight he came out from behind the bar and started toward the table where the two men were fighting; before he could reach them the manager had arrived at the table and the fighting had ceased, having lasted no more than six seconds; Churchill observed the conversation which took place between the manager and the two men who had been fighting; neither of these men showed any signs of intoxication; they did not smell of alcohol, their speech was not slurred and they did not stagger or have difficulty standing while they were talking with the manager; later that night Churchill learned that plaintiff had hurt her arm when it struck a pillar near her table after the fight broke out.

Plaintiff filed no opposition to the motion for summary judgment. The motion was denied. Defendant then petitioned for a writ of mandate to compel the trial court to grant the motion. After filing an unpublished opinion, this court (Div. 2) issued a peremptory writ of mandate commanding the trial court to vacate its order denying defendant's motion for summary judgment and to rehear the motion. The motion was noticed for rehearing and plaintiff filed opposing declarations. Following rehearing, defendant's motion for summary judgment was granted. In its minute order granting the motion the trial court stated that it construed the opinion of the appellate court as a determination that defendant had produced evidence showing that plaintiff was

not entitled to relief under either of the theories set forth in her complaint, thereby shifting to plaintiff the burden of showing the existence of a triable issue of fact as to one or both of those theories;[1] plaintiff failed to sustain that burden.

 The purpose of the summary judgment procedure is to penetrate through evasive language and adept pleading and ascertain the existence or absence of triable issues of fact. (*Chern* v. *Bank of America* (1976) 15 Cal.3d 866, 873 [127 Cal.Rptr. 110, 544 P.2d 1310].) The court makes this determination concerning triable issues by examining the papers in support of and in opposition to the motion. (Code Civ. Proc., § 437c; *Barrett* v. *Atlas Powder Co.* (1978) 86 Cal.App.3d 560, 563 [150 Cal.Rptr. 339].) The court also may draw reasonable inferences from the facts before it. (*DeSuza* v. *Andersack* (1976) 63 Cal. App.3d 694, 698 [133 Cal.Rptr. 920].) A defendant moving for summary judgment must conclusively negate a necessary element of the plaintiff's case or establish a complete defense and thereby demonstrate that under no hypothesis is there a material factual issue which requires the process of a trial. (*Vanderbilt Growth Fund, Inc.* v. *Superior Court* (1980) 105 Cal.App.3d 628, 633-634 [164 Cal.Rptr. 621].) "Under well established rules governing summary judgment motions, the affidavits of the moving party are to be strictly construed and those of the opponent liberally construed. [Citations.] Nevertheless, a party opposing a motion for summary judgment which is supported by affidavits or declarations sufficient to sustain the motion, has the burden of showing that triable issues of fact exist." (*Chern* v. *Bank of America, supra*, 15 Cal.3d 866, 873.) If he does not sustain that burden summary judgment is proper. (See *Terry* v. *Atlantic Richfield Co.* (1977) 72 Cal. App.3d 962, 971 [140 Cal.Rptr. 510]; *Keene* v. *Wiggins* (1977) 69 Cal.App.3d 308, 311 [138 Cal.Rptr. 3].)

At the time plaintiff's alleged cause of action accrued (Mar. 1976), a commercial vendor of alcoholic beverages could be held liable for injuries proximately caused by the sale of liquor to an obviously intoxicated

---

[1]In its opinion on defendant's petition for writ of mandate, the appellate court stated: "In the present case the issues raised by the pleadings are whether defendant-petitioner negligently served alcoholic beverages to persons who were already intoxicated and whether they [*sic*] failed to supervise and control the premises. The three depositions fail to establish facts which would support the contentions of plaintiff and real party in interest Saatzer. The declaration of Howard Leigh Churchill positively controverts those contentions. Where no opposing affidavits are filed, the court is entitled to treat the supporting declarations as true. [Citations.] And where the declarations of the moving party state facts establishing every element necessary to sustain a judgment, then the opposing party must file affidavits or declarations of his own."

customer. (Bus. & Prof. Code, § 25602; *Vesely* v. *Sager* (1971) 5 Cal. 3d 153 [95 Cal.Rptr. 623, 486 P.2d 151].)[2] ▮ Aside from this basis of liability, the proprietor of a place where intoxicating liquors are dispensed owes a duty of exercising reasonable care to protect his patrons from injury at the hands of fellow guests. (*Bartosh* v. *Banning* (1967) 251 Cal.App.2d 378, 383-384 [59 Cal.Rptr. 382]; *Slawinski* v. *Mocettini* (1963) 217 Cal.App.2d 192, 196 [31 Cal.Rptr. 613].) However, the proprietor is not an insurer of the safety of his patrons; his obligation is limited to the exercise of reasonable care and he is liable only for negligence in receiving or harboring guests of known violent or vicious propensities. (*Slawnski* v. *Mocettini, supra*, 217 Cal.App.2d at p. 196.) ▮ "[T]he duty of a tavern keeper to protect a patron from injury by another arises only when one or more of the following circumstances exists: (1) A tavern keeper allowed a person on the premises who has a known propensity for fighting; (2) the tavern keeper allowed a person to remain on the premises whose conduct had become obstreperous and aggressive to such a degree the tavern keeper knew or ought to have known he endangered others; (3) the tavern keeper had been warned of danger from an obstreperous patron and failed to take suitable measures for the protection of others; (4) the tavern keeper failed to stop a fight as soon as possible after it started; (5) the tavern keeper failed to provide a staff adequate to police the premises; and (6) the tavern keeper tolerated disorderly conditions [citations]." (*Slawinski, supra*, at p. 196.)

▮ In support of his motion for summary judgment, defendant produced evidence showing that plaintiff was not entitled to recover either on the theory that defendant furnished alcoholic beverages to obviously intoxicated persons (the combatants) or on the theory that defendant failed to exercise reasonable care to protect plaintiff from injury at the hands of the combatants. Plaintiff contends that the declarations which she presented in opposition to the motion raise triable issues of fact as to whether defendant stopped the fight as soon as possible after it start-

---

[2]In 1978 the Legislature amended Business and Professions Code section 25602 to provide that no person who furnishes any alcoholic beverage to an obviously intoxicated person is civilly liable for personal injuries inflicted as a result of intoxication by the consumer of the alcoholic beverage. (Stats. 1978, ch. 929, § 1.) The Supreme Court has upheld the constitutionality of the statute as amended. (*Cory* v. *Shierloh* (1981) 29 Cal.3d 430 [174 Cal.Rptr. 500, 629 P.2d 8].) However, the amendment operates prospectively from its effective date of January 1, 1979 (*Fosgate* v. *Gonzales* (1980) 107 Cal.App.3d 951, 958-961 [166 Cal.Rptr. 233]; *Sissle* v. *Stefenoni* (1979) 88 Cal.App. 3d 633, 635, fn. 1 [152 Cal.Rptr. 56]), and thus does not bar plaintiff's cause of action based on defendant's alleged furnishing of alcoholic beverages to obviously intoxicated persons.

ed, whether he provided a staff adequate to police the premises, and whether he tolerated disorderly conditions in the lounge. The contention lacks merit.

The opposing declarations of plaintiff, Marie Tisch and Penny Eager (another witness to the altercation) state that the fight lasted two or three minutes, not six seconds as Howard Churchill indicated in his declaration in support of the motion. However, the relevant consideration is not how long the fight lasted, but whether defendant's employees stopped it as soon as possible after it started. In her deposition Marie Tisch testified that the bartender and another employee "got to the back table as fast as they could and they broke [the fight] up." Nothing in the opposing declarations controverts this testimony. Plaintiff, Tisch and Eager state that they did not see a "bouncer" in the lounge on the night of March 21, 1976. The absence of a bouncer does not in itself show that defendant failed to provide a staff adequate to police the premises. The opposing declaration of John Cox (a waiter in the dining room of defendant's establishment) states that he had been instructed by defendant to assist the bartenders when patrons caused trouble in the bar area; accordingly, when he heard a disturbance in the bar on the night in question, he immediately went from the dining room to the bar to assist his fellow employees "in case there was any serious trouble." This evidence, produced by plaintiff, refutes her argument that defendant's staff was inadequate to control unruly patrons in the bar. All of the declarations show that the bar was crowded, the patrons noisy, and the music loud. These circumstances do not constitute disorderly conditions which threatened the safety of patrons in the bar, especially in view of plaintiff's deposition testimony that while the people in the bar were very noisy, no one there was causing any trouble.

The declarations indicate that defendant's employees did not ascertain the names of the two men involved in the fight. Plaintiff argues that such failure constitutes a breach of the tavern keeper's duty to a patron injured as the result of an altercation on his premises. In support of this contention plaintiff cites *Clemente* v. *State of California* (1980) 101 Cal.App.3d 374 [161 Cal.Rptr. 799]. There a pedestrian, seriously injured when he was struck by a motorcyclist, sued the state and the highway patrol officer who had investigated the accident on the theory that the officer was negligent in failing to obtain the motorcyclist's identity and such negligence deprived plaintiff of the opportunity to sue the motorcyclist for damages for personal injuries. The court reversed judgment of dismissal; indicating that because the completely disabled

pedestrian was dependent on the expertise of the investigating officer a special relationship between them obtained giving rise to a duty on the part of the officer to ascertain the identity of the motorcyclist. (101 Cal.App.3d at pp. 379-380; see also *Mann* v. *State of California* (1977) 70 Cal.App.3d 773, 779-780 [139 Cal.Rptr. 82].) The *Clemente* case does not aid plaintiff, for nothing therein compels the conclusion that a special relationship exists between a tavern keeper and his customers which imposes on the tavern keeper the duty to obtain for one customer injured by another the name of the latter. Of greater significance is the fact that the complaint herein does not allege that defendant was negligent in failing to ascertain the identities of the persons involved in the fight; defendant's negligence allegedly consisted of serving alcoholic beverages to obviously intoxicated persons and failing to protect plaintiff from injury at the hands of other customers. Affidavits on a motion for summary judgment must be directed to the issues raised by the pleadings. (*Keniston* v. *American Nat. Ins. Co.* (1973) 31 Cal.App. 3d 803, 812 [107 Cal.Rptr. 583].) The counteraffidavits filed in response to a defendant's motion for summary judgment may not create issues outside the pleadings and are not a substitute for an amendment to the pleadings. (*Craig* v. *Earl* (1961) 194 Cal.App.2d 652, 656 [15 Cal.Rptr. 207].) The statement in plaintiff's opposing declarations that defendant did not ascertain the names of the men involved in the fight is outside the scope of the issues raised by the pleadings and thus does not create a triable issue of fact warranting denial of defendant's motion for summary judgment.

The judgment is affirmed.

Spencer, P. J., and Hanson (Thaxton), J., concurred.