## THE PLANTERS BANK *v.* BASS.

The Supreme Court may make new parties in cases pending on appeal, whenever it becomes necessary to do so, from the death, insolvency, or bankruptcy of a party, or in consequence of the forfeiture of its charter by a litigant corporation. The power to do so is indispensable to the exercise of its appellate jurisdiction, and is not prohibited by art. 63 of the constitution, which declares that the jurisdiction shall be appellate only. When, in the exercise of this power, a contest arises as to facts, the ascertaining of which is indispensable to the action of the court, the issue should be sent down to be 'tried by the court of the first instance; but when the question is one of law, it would be idle to remand the case.

Where a judgment of the highest tribunal of another State, has declared a statute of that State to be unconstitutional, the question of its 'constitutionality will be regarded as settled.

---

Trustees, appointed under a law of another State to take charge of the assets, collect the debts. &c. of a dissolved corporation, may sue a debtor of the corporation in this State.

The small excess of interest gained in calculations of interest, by considering the year as consisting of only 360 days, is not usurious.

In an action against the endorser of a note protested in another State, the testimony of the notary by whom the protest was made, or that of other witnesses, will be admissible to prove the fact of his being a notary. *Per Curiam:* The strong presumption arising from the undisturbed exercise of a public office that the appointment to it is valid, renders it, in general, unnecessary to prove the written appointment of public officers. All who are proved to have acted as such are presumed to have been duly appointed, until the contrary appears. There is an exception to this rule, where the officer, being plaintiff, avers his title to the office, or the mode of his appointment.

Where in an action by a bank established in another State, on a note discounted by it and payable at its office, it is proved that the notary by whom the note was protested had died before the trial, and that he was the agent usually employed by the bank to make demands and give notices of protest, the protest made by him will be admissible as a memorandum of his acts, and will be evidence of them.

Notice of protest to an endorser residing in a parish in this State, addressed to him at the post-office nearest to his residence, though in another State, in the absence of any proof of his being in the habit of receiving his letters and papers at a more distant office, is sufficient, though his domicil be not mentioned in the address.

APPEAL from the District Court of Concordia, *Curry*, J. The facts of this case are fully stated in the opinion of the court, *infra*.

*R. N.*, and *A. N. Ogden*, for the plaintiffs. 1. As to the right to make parties, see C. P. 903. 3 Wendell, 667. 21 Ib. 253. 10 La. 437. 6 Wheaton, 260.

2. The question involved in the exception to the deposition of the notary, on the ground that his capacity as notary could not be established by his own evidence, and that his commission, as the best evidence, should have been produced, was settled in *Las Caygas* v. *Larionda's syndics*, 4 Mart. 287. See also *Jacob* v. *United States.* 2 Brock. C. C. R. 520. 2 Peter's Dig. 218. "A memorandum made by a person in the ordinary course of his business, of acts which his duty in such business required him to do for others, is, in case of his death, admissible evidence of acts so done." *A fortiori* the acts of a public officer are so admissible. *Nichols* v. *Webb*, 8 Wheat. 326; 5th Condensed R. 521. *Welsh* v. *Barnett*, 15 Mass. R. p. 380.

3. The notice to the endorser is objected to on the ground that it was not directed to him at his domicil, and the case of *Duncan* v. *Sparrow* is relied on as authority. That case is not authority. If authority, it can have no application to this case. We rely on long and well established usage, and on the rules of commercial law. Rodney was proved to be the nearest post-office to the residence of *Bass*, and the notice was properly sent there. *Harrison* v. *Bowen*, 16 La. 282. *Follain* v. *Dupré*, 11 Rob. 454.

4. It is not necessary that the notice should contain a formal allegation that payment was demanded at the elected domicil of payment. It is sufficient that it state the fact of non-payment of the note, and that the holder looks to the endorser for indemnity. *Mills* v. *U. S. Bank*, 11 Wheat. 431.

5. The defence of usury, on the ground of excess of interest of $13 34, on a loan of $20,000, can have no weight. The Supreme Court of Mississippi, on this very note, in a suit against another endorser, overruled that defence. *Planter's Bank* v. *Snodgrass*, 4 Howard's R. 573. To constitute usury there must be an intention to take usurious interest; a corrupt agreement will not be enforced. *Bank of the United States* v. *Wagner*, 9 Peter, 378. The mode of calculating interest was adopted by the bank for convenience, and has been long sanctioned by universal usage. The case from Howard is conclusive on the point. See also *Walden* v. *City Bank*, 2 Rob. 197.

*Stacy*, *Sparrow*, and *Prentiss*, for the appellant. 1. This court, having only appellate jurisdiction, cannot determine originally the question of the right of the trustees to make themselves parties. *Oakley* v. *Phillips*, 6 Mart. N. S. 306. *Baron* v. *Kingsland*, 5 La. 379. *Taylor* v. *Jeffries*, 10 La. 438. *Brown* v. *Williams*, 12 La. 614. *State* v. *Bermudez*, 14 La. 481. Sess. Acts of 1846,

PLANTERS
BANK
*v.*
BASS.

PLANTERS
BANK
*v.*
BASS.

p. 161.   2.  The trustees cannot make themselves, or be made, parties.   6 Bin-
ney, 359.   5 Cranch, 287.   12 Wheaton, 361,   1 Har. & McH. 236.   2 Ib.
463.   2 Johns. 3.   20 Ib.   Story's Confl. of Laws, § 565.   Taking them as
administrators appointed in Mississippi, they cannot sue here.   Story's Confl.
of Laws, § 512, 513.   4 Mart. 571.   16 La. 670.   8 La. 508.   9 Wheat. 565.
6 Smedes & Marshall, 529.   3.  There is no proof that payment of the note
was demanded at the place of payment.   The notarial protest, if legal and re-
gular, makes no proof of demand of payment.   *Waldron* v.  *Turpin*,   15 La.
554.   H. & H.'s Digest, p. 609, sec. 33.   The alleged protest is not authen-
ticated in the manner required by the laws of Mississippi.   *Tickner* v. *Roberts*,
11 La. 16.   H. & H.'s Digest, p. 434, sec. 36.   Parol evidence was improperly
admitted to prove the capacity of the notary.   It should have been proved by
the certificate of the governor, under the great seal of the State.   3 La. 148.
13 Ib. 284, 362.   The protest is not admissible as a memorandum of a deceased
person, to make proof of the demand.   By the laws of Mississippi (H. & H.'s
Digest, p. 609, s. 33), notaries are bound to make out and certify on oath true
records of their protests and notices.   *Hyde* v. *Planters Bank*, 17 La. 563.
4. Notice of protest was insufficient, being directed to Rodney, Mississippi,
and not to the parish of Concordia, the domicil of *Bass*, the endorser.   *Duncan*
v. *Sparrow*, 3 Rob. p. 164.   5. The contract between the bank and the
makers of the note, by which the former discounted the note, was usurious
and void.   By its charter the bank was allowed to take, on notes like this,
interest or discount at the rate of seven per cent per annum *only*.   This
note had eight months to run.   The interest or discount on it for
that time, with the three days grace added, was $955.   The amount
of interest taken or reserved was $968 34, being an excess over the legal rate
of $13 37, and making a rate of seven and one-tenth per cent per annum.   The
bank obtained this excess, by calculating interest according to Rowlett's Tables,
which make the year as 360 days ; a month as 30 days, &c.   The bank knew
that the mode of calculation of interest systematically adopted by it, gave more
than the legal rate.   It acted under a full and correct knowledge of the facts.
This is sufficient evidence of a corrupt intent, and constitutes the crime of usu-
ry.   *Maine Bank* v. *Butts*, 9 Mass. Rep. p. 48.   *Marsh* v. *Martindale*, 3 Bos-
anquet & Puller, p. 154.   *Bank of Utica* v. *Wagner*, 2 Cowen's Rep. p. 769.
*Bank of Utica* v. *Smalley*, 9 Ib. 779.   *N. Y. Firemen's Insurance Company* v.
*Ely*, 9 Ib. 704.   *Barnard* v. *Young*, 4 Randolph, pp. 406, 411.   17 Vesey,
p. 46.   The effect of usury is to avoid the contract, so that no recovery can be
had.   *Bank of the United States* v. *Owens et al.*, 2 Peters, p. 538.

The judgment of the court was pronounced by

SLIDELL, J.   In the year 1836, the plaintiffs brought suit upon a note for
$20,000, against *Elias Bass*, as endorser, who died pending the action ; his
widow was made party in his stead, and, in 1842, a judgment was rendered in
favor of the plaintiffs.   In 1843, an appeal was taken by the defendant.   After
the case came to the Supreme Court it was set for argument, heard, and taken
under advisement of our predecessors ; but not having been decided, it was
again set for argument before this court.   When called for argument the appel-
lant placed on record a suggestion and plea, to the following effect :  That since
the appeal was taken, the charter of the plaintiffs had been adjudged by the
High Court of Errors and Appeals of the State of Mississippi to be forfeited ;
that the said corporation was declared dissolved, and was perpetually enjoined
from further exercising any of the franchises, liberties and privileges conferred
by said charter, in proof of which was exhibited a duly certified copy of the
suit and judgment of forfeiture, which was pleaded as a perpetual bar to the
further prosecution of this suit :  That the trustees appointed to liquidate the
affairs of said dissolved corporation by the Circuit Court of Adams county, up-
on pronouncing said decree of forfeiture, are deprived and divested of all legal
authority to sue for or collect any debt due to the said *Planter's Bank*.   That
the only power they possess is to sell, under an order of court, all the property

and evidences of debt heretofore belonging to said bank, and which have come into their possession. In proof of which they exhibit to the court an act of the legislature of the State of Mississippi, approved Feb. 28th, 1846, entitled " An act to amend an act entitled an act to prescribe the mode of proceeding against incorporated banks for a violation of their corporate franchises, &c., approved July 26, 1843," which act so amended is also exhibited. That the appellant pleads the above statutes in bar of any prosecution of this suit by the trustees so appointed. It was further pleaded that any authority conferred upon the trustees, either by the acts of the legislature or by the court of that State, is strictly territorial, and cannot be extended or recognised without the limits of the jurisdiction of that State.

Thereupon the trustees, *Galbraith & Cooper*, appointed by the court in Mississippi, entered their appearance in this cause, and filed a petition praying to be permitted to become parties to the suit. At the same time and by the same counsel, an appearance was also entered for *Walworth, Montgomery*, and *Mandeville*, who claimed to be owners of the debt due by the defendant by virtue of a deed of assignment and trust, said to have been executed by the *Planters Bank* to them, in trust for creditors, prior to the decree of forfeiture. These last named trustees we shall at present leave out of view.

The petition of *Galbraith & Cooper* having been filed, the appellant filed an answer, in which he reiterates the matters pleaded in the suggestion and plea above stated, and asks that the cause be remanded to the District Court for the trial and decision of the issues thus presented. He contends that this court has no right to consider them originally.

There is no doubt that this suit belongs to that class of cases in which our jurisdiction is appellate only. Constitution, art. 63. It is also true that all the matters presented by the suggestion and plea of the appellant, and by the petition of the trustees and the answer made to it, are new matters, and which have never been submitted to the consideration of the inferior court. The controversy in question has originated in the appellate tribunal, and the principle is undoubted that by virtue of our constitutional powers as an appellate court we cannot create a cause.

There are, however, some subjects which an appellate court can take cognizance of, and act upon, originally. They are those which are indispensable to the exercise of its appellate jurisdiction. Of these the one of most frequent occurrence is that of making new parties, on an appeal pending, in case of the death of a litigant. Without proper parties a case perhaps cannot, or at least ought not to, be heard; and were there no means of making them, the appellate functions of the court would be arrested on the one hand, while on the other hand the cause would remain withdrawn by the appeal from the jurisdiction of the inferior tribunal. Our legislation on this subject is very meagre; but what we have is inconsistent with the idea that an appeal abates by the death either of the appellant or the appellee. Although but a single case is expressly stated in the Code of Practice in which the authority to revive is granted, our predecessors appear to have considered the authority as existing inherently in the Supreme Court, by virtue of its constitutional organization and the purposes of its creation. From the earliest existence of a Supreme Court in Louisiana down to the present time, and under both constitutions, the Supreme Court has constantly exercised this power of making parties. It has not been considered as limited to the case of natural death. Syndics, assignees in bankruptcy, com-

PLANTERS
BANK
*v.*
BASS.

missioners of banks of this State whose charters have been forfeited, have been ordered to be made parties, or permitted by the court on their own motion to come in. In every such case the court has acted on a new matter, and originally; yet its authority to do so has not been doubted, where the fact was undisputed that the party proposed to be made, or offering to come in, possessed the quality of heir, executor, syndic, &c. This view of the inherent power of an appellate court, as springing from the nature of its functions and the purposes of its creation, is not peculiar to ourselves or our predecessors. The Supreme Court of the United States, we think, acted under that view of its appellate powers, in the case of *Green* v. *Watkins*, 6 Wheaton, 263, and in the rules which it then took occasion to frame to save the dismissal or abatement of writs of error. But when, in the exercise of this power, there arises a contest as to facts, the ascertainment of which is indispensable for the action of the court, then it is the duty of the court to remand an issue to be tried by the inferior court, to the end that the necessary facts may be there ascertained. In the present case, which is to all intents and purposes a question of revival, there is no such contest as to facts. The facts are clear and undisputed; they are those which the appellant himself, who asks the remanding to the inferior court, has placed before us, and which he cannot and does not gainsay. They are, the record of proceedings for forfeiture, the judicial appointment of the trustees, and the Mississippi statutes of 26th July, 1843, and 28th February, 1846. Upon these we are to determimine whether the trusteees are competent to stand in judgment here, as the legal owners of the claim against *Bass*, in the place and stead of an extinct corporation, to whose rights of property they claim to have succeeded. It would be an unnecessary and idle form to remand the cause to the court below, for its opinion on a pure question of law. As well might it be said, when an executor appears in this court and offers himself as a party to an appeal taken by or against the deceased, and his quality is not disputed, that we should remand the cause to the district judge, to enquire whether an executor duly appointed is capable of representing the succession of his testator. It does not form an objection to our examination of this subject originally, when presented under such circumstances, that in reality it involves and practically determines the future right of the trustees to execute such judgment as we may render. It is true the right of executing the judgment is involved, but it is an unavoidable incident of the question of revival; for it would be a vain thing for this court to render a final decree, if that decree, when rendered, could not be executed.

Are these trustees then competent to have this suit revived in their names, and to stand in judgment as the successors of the bank? For the proper consideration of this subject, it is necessary to notice briefly the circumstances of their appointment. In July, 1843, the State of Mississippi passed an act entitled, "An act to prescribe the mode of proceeding against incorporate banks for a violation of their corporate franchises, and against persons pretending to exercise corporate privileges under acts of incorporation, and for other purposes." The constitutionality of this law has not been questioned in argument, and we have only to consider its meaning and effect.

Under this statute proceedings were instituted against the *Planters Bank*, which resulted in a decree of forfeiture and the appointment of trustees. These trustees, in obedience to the provisions of the statute, were authorised by

the decree to take charge of the assets of the company wherever the same may be found, either in the hands of the officers of the bank or its agents, trustees or attorneys, to sue for and collect all debts due to the company, and the proceeds of the debts when collected and the property when sold to apply, as thereafter might be directed by law, to the payment of the debts of the company. Under this statute and the decree of the court adjudging the forfeiture and appointing the trustees, we consider the trustees as clothed with the legal ownership of the assets of the bank—as the successors of the bank for the benefit of creditors. Being clothed with the power to sue, they must be considered as authorised to have suits revived in their names; and so the courts of Mississippi have considered their title and authority, and have repeatedly recognised their right to revive, as may be seen in the very able and unanswerable opinion of Chief Justice Sharkey, in the recent case of the *Commercial Bank* v. *Chambers.*

But it is said in argument that, the authority of the trustees to prosecute suits, and by consequence to revive for their benefit suits instituted by the bank before their appointment, has been taken from them by the statute of Mississippi of 28th February, 1846 ; that this act applies, by its express terms, to trustees theretofore appointed, and is a positive and inflexible command to the trustees to sell all the assets of the extinct corporation ; that the prosecution of suits and their collection, in the usual course of law, is inconsistent with this imperative command. When this argument was presented, there seemed to us in the legislation of 1846, much of the hardship and injustice asserted by the opposite counsel; and we feared that the delicate and disagreeable duty would be unavoidable, of comparing these two statutes of a sister State, and determining whether that of 1846, by its conflicting legislation, repealed certain portions of the act of 1843, material to our present enquiry, or whether the act of 1846 was, *pro tanto,* unconstitutional and void. We have been relieved, since this cause was taken under advisement, from a duty so delicate and a responsibility so grave, by the decision on the very point, by the highest tribunal of the State whose legislation we were required to interpret. That court, upon an elaborate examination, in the case already cited, and with a logic which seems to us unanswerable, has declared the act of 1846 unconstitutional and void, so far as it attempted to curtail or impair the rights of the trustees, appointed before its passage under the act of 1843, to prosecute and collect claims due to the bank ; and permitted the trustee of the *Commercial Bank,* on suggestion of the dissolution of the corporation, to revive in his name, as trustee, a suit brought originally by the bank, in which their was judgment for the defendant in the court below, and from which a writ of error had been sued out by the bank, pending which the forfeiture of its charter was decreed. The trustee then offered in support of his motion, the judgment of forfeiture and his own appointment, and admitted that he had been ordered to sell under the act of 1846.

Having referred to the decision in that cause, it is not necessary that we should recapitulate at length the reasoning of the High Court of Errors and Appeals of the State of Mississippi ; but the following is a brief summary of the opinion : That by the statute of 1843, and the judicial appointment of the trustees under that statute, the debts due to the bank were preserved in full vigor. That the legal ownership of those debts vested in the trustees, but that the property thus placed in their hands was a trust fund in favor of the creditors of the bank, who had a vested beneficial interest in it. That these creditors,

PLANTERS
BANK
v.
BASS.

having an equitable interest, had also a remedy in chancery, to compel the trustees to discharge their duty by collecting the debts. That subsequent legislation could not produce a total change in the rights thus acquired by the parties, by taking away entirely the remedy of the creditor, and compelling the trustees to sell their legal title. That by the act of 1846, these rights were attempted to be swept away. That such attempt was unconstitutional. That therefore that portion of the act of 1846, relating to the sale of the property and assets of banks, cannot operate as to the banks whose charters had been forfeited and trustees appointed under the act of 1843, prior to the passage of the last act. That the motion to revive must consequently be sustained.

But it is contended that whatever rights of revival the trustees might have in Mississippi, they have none here ; that an extra territorial operation of the laws of Mississippi cannot be recognized. The rule adopted by many of the tribunals of this country, that the laws of a foreign country, such as bankrupt laws, &c., whose action is *in invitum*, cannot operate a legal transfer of property in our country, is a rule which, if its correctness be conceded, is not apposite to the present enquiry. When a contest arises in our forum between one of our citizens, a creditor of the bank, and these trustees claiming title by the operation of the statute of 1843, the decree of forfeiture and their judicial appointment, it will be time enough to consider the rule invoked. Here is no such contest. The parties litigant are the trustees and the debtor. So far as these parties are concerned, the title of the bank has passed to the trustees; and whether it be the legal or equitable title, is unimportant in our forum. In most of the cases in which assignments under foreign bankrupt laws have been denied to give title against attaching creditors, it has been distinctly admitted that the assignees might maintain suits in our courts under such assignments for the property of the bankrupt. See Story's Conflict of Laws. See also *Holmes* v. *Remsen*, 20 Johnson, 267. *Milne* v. *Moreton*, 6 Bin. 369. Will any one say that the rule of comity should be more gracious towards a foreign country, than towards a sister State ? If there be any difference it should be more favorable to the latter, when we consider the fraternal ties which bind the States of this Union together as members of one great political family, and the deep interest which each has in the welfare of the others. When this subject of comity between the States was before the Supreme Court of the United States, in *Earle's* case, Chief Justice Taney said : " The history of the past, and the events which are daily occuring, furnish the strongest evidence that they have adopted towards each other the laws of comity in their fullest extent." We have always permitted the corporations of other States, who are creatures of the laws of those States, to sue in the courts of Louisiana ; with what reason can we refuse our jurisdiction to these trustees, who derive from the same source their authority to sue? If there were a struggle for priority and preference by a creditor of the bank against these trustees, there might be some plausibility in asking for the application of the doctrine invoked by the appellant: but as this case stands, we are virtually solicited to disgrace the administration of justice in this State, by permitting one of our own citizens, upon a barren fallacy, to repudiate his just obligation.

We are therefore clearly of the opinion that the trustees have the right to be made parties in this cause, and to prosecute it in the place and stead of the extinct corporation ; and shall now proceed to the consideration of the alleged errors in the judgment of the court below.

It is said that the note on which this suit was brought, was endorsed to, and came into the hands of, the makers, and that this extinguished it as to all the parties but themselves. The allegation in *Bass's* answer is a sufficient reply to this defence. He admits that it was discounted by the plaintiffs, and that he endorsed it for the accommodation of the makers, and for the purpose of enabling them to obtain a loan of money from the bank, by way of discount of the note. It is said the bank discounted the note at an usurious rate, having calculated the interest according to Rowlett's tables, which gave a small excess to the bank. The Supreme Court of Mississippi overruled this defence, in the case of this same plaintiff against *Snodgrass.* 4 Howard, 573. It is unnecessary to do more than to refer to the opinion in that case.

The note was payable at the bank's office at Port Gibson. To prove presentment and demand at the place of payment, a notarial protest was offered. The instrument purported to be signed by one *Pope,* who styles himself therein a notary public, dwelling in Port Gibson, duly commissioned. This person was examined as a witness under commission some years previously to the trial of the cause, and then deposed that he was a duly commissioned notary at the date of the protest, and that he protested the note, as notary, on the day of its maturity; but he did not state in his deposition the particulars of the demand. Another witness, examined at the trial of the cause, proves the death of *Pope,* the genuineness of his signature to the protest, and that he acted during the year 1836, as a notary public in Mississippi; that *Pope* was the person usually employed by the bank to make demands of payment of its notes and bills of exchange, and notify endorsers; and that he believed him to be regular and correct in his business habits. By the law of Mississippi it appears that the protest by a notary of a bill or note is available as evidence, *per se,* there, to prove presentment, demand and refusal, as is the like instrument signed by a notary of this State in our courts. The defendant objected to this evidence to prove *Pope's* official capacity, and also to the admission of the protest; both which objections the court below overruled. From the strong presumption arising from the undisturbed exercise of a public office that the appointment to it is valid, it is not in general necessary to prove the written appointment of public officers. All who are proved to have acted as such, are presumed to have been duly appointed to office until the contrary appears. There is an exception to this rule where the officer, being plaintiff, avers his title to the office or the mode of his appointment. See Greenleaf on Evidence, § 92, *Las Caygas* v. *Larionda's syndic,* 4 Martin, 287. In that case a power of attorney executed before a notary in Cuba was offered in evidence, and a witness was offered to prove the signature and capacity of the notary. The court there said, that if the controversy had any relation to his right to fulfil the duties of the office claimed by him, a certificate under the national seal would be the proper evidence, but, for all other purposes, proof of his being a notary *de facto* would suffice. Upon these authorities we are of opinion that the court below properly admitted the testimony of witnesses to show that, at the date of the protest, *Pope* was a notary public in Mississippi.

Whether after this evidence, and proof also that in the courts of Mississippi the instrument would, *per se,* have made proof of the presentment and non-payment, the protest was admissible with the like effect in our courts, is a question not now necessary to be decided. Assisted by proof that the notary had died before the trial of the cause, and that he held towards the bank the rela-

PLANTERS
BANK
v.
BASS.

tion of an agent usually employed by the bank to make demands and give notices, wo think the paper was duly received after his death as a memorandum of acts so done, and forms evidence of them. Memoranda of a notary, in a shape less formal than the document in question, were recognised as admissible evidence, in the case of *Nichols* v. *Wcbb*, 8 Wheaton, 326. In that case it would seem from the language of the court that, under the laws of Tennessee, the protest was not an official act, which would have constituted evidence, *per se*, in a court of Tennessee; yet it was deemed good evidence of the demand, as were the memoranda in the notary's book of notice. See also Chitty on Bills, 642.

*Bass* lived in the parish of Concordia at the time of the protest, and the notice was seasonably mailed at Port Gibson, addressed to him at Rodney, which was the nearest post office to his residence. It was about eleven miles from his residence; the Natchez post office was about twenty-three miles from his residence. It does not appear that, at the time, there was any post office in Concordia. There was a memorandum on the note, which the judge below says he ascertained, by comparison of hand-writing with *Bass's* endorsement, to be, as to the name, in his hand-writing, in which it was said that " *Bass* will acknowledge notice at Rodney post-office ;" this fact of hand-writing does not, however, appear to have been proved at the trial. Aside from this, however, and in the absence of proof that the bank had been notified that *Bass* usually received his letters at the more distant post office at Natchez, we think the notice was properly addressed.

We find no error in the judgment of the court below.

As to the assignees *Walworth, Montgomery* and *Mandeville*, we have not before us the assignment under which they claim, nor the means of expressing any opinion as to its validity. If they have any rights they can be presented by third-opposition, in the court below.

It is therefore decreed that the judgment of the court below be affirmed, with costs, in the names of the said trustees, *James D. Galbraith* and *William Cooper*, as plaintiffs : the said *Galbraith* and *Cooper*, trustees, being hereby recognized as the successors of the president, directors and company of the Planters' Bank of the State of Mississippi, the original plaintiffs in this cause, and, as such trustees, the judgment creditors of the said appellant *Sarah Morris*, in the place and stead of the said original plaintiffs.