Filed 3/18/13  Goodwyn v. Belly Up Tavern CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

| | |
|---|---|
| KOREY GOODWYN, | D060680 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2009-00061977-CU-PO-NC) |
| BELLY UP TAVERN, LLC, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Jacqueline M. Stern, Judge.  Reversed with directions.

After a four-day trial, a jury found Belly Up Tavern, LLC (Belly Up) negligent in failing to prevent injuries sustained by Kory Goodwyn in a fight at Belly Up's concert venue and bar in Solana Beach, California.  Belly Up moved for judgment notwithstanding the verdict (JNOV), contending there was insufficient evidence to support the element of causation in Goodwyn's negligence claim.  The trial court granted the motion, reversing the jury's verdict, and entered judgment in favor of Belly Up.

Goodwyn appeals, contending there was sufficient evidence presented at trial to support the jury's finding that Goodwyn's injuries were caused by Belly Up's breach of duty. We agree and reverse the judgment.

BACKGROUND

On August 10, 2009, Goodwyn and Eddie Haynes attended a hip-hop concert at Belly Up. During one of the opening acts, Goodwyn and Haynes were standing near the bar and were approached by a group of seven other concertgoers. A man in the group (the aggressor) looked at Haynes and without provocation said, "What you looking at, nigger?" Haynes responded, "You need to go on with this stuff. I'm not here for this." After this exchange, a companion of the aggressor intervened to diffuse the situation and he and the aggressor stepped away from Haynes and Goodwyn. Goodwyn looked for a security guard or bartender to intervene. He saw the only bartender on duty that night at the other end of the bar, but could not get his attention. Another concertgoer, Kimberly Handy, who met Haynes and Goodwyn for the first time at the concert and witnessed the exchange, also unsuccessfully attempted to flag down the bartender.

A total of 10 security guards were on duty the night of the incident, three of whom were employed by an outside security company and stationed in the parking lot. Of the seven guards inside, two manned the entrance to check tickets and identification, one monitored the VIP section and one was responsible for the smoking section. One of the remaining three guards, James Phillips, was stationed at the bar where the initial exchange involving Haynes occurred. Near the time of that initial exchange, however,

2

Phillips had moved away from the bar and was positioned near the stage to assist with a verbal altercation between a performer and members of the audience.

A minute or so after the initial exchange with Haynes, the aggressor and his companions returned and the aggressor instigated another argument with Haynes. The aggressor threw a punch at Haynes and the two fell into a brawl on the floor. Goodwyn attempted to come to Haynes's aid but was grabbed from behind, held to the ground and repeatedly punched and kicked by the aggressor's friends. Haynes testified that the attack seemed to last "an eternity," and Goodwyn testified that the fight seemed to last for eight to 10 minutes. Handy similarly recalled the entire incident lasting about 10 minutes. Goodwyn and Handy testified that the fight was not broken up by security guards and ended only when the aggressor and his companions walked away. Haynes testified the fight was broken up by bystanders and that Belly Up's security guards did not respond to the altercation.

In contrast to the testimonies of Goodwyn, Haynes and Handy, the bartender testified that once he saw the fight he signaled to Phillips, who made his way over and broke up the fight with the assistance of three other security guards. The bartender believed it took Phillips less than 50 seconds to move from his position near the stage to the fight. Phillips testified that once he saw the fight from his position near the stage, he immediately made his way to the location of the fight and broke it up. Another Belly Up employee who was not working but was attending the concert witnessed the fight and also testified Belly Up security ended the altercation.

After the incident ended, Haynes and Goodwyn left the building and asked security guards stationed outside to call the police. Haynes and Goodwyn went to their cars in the parking lot, assessed the situation and their injuries and left. Goodwyn sustained physical injuries including large red lumps on the back of his skull, a black eye, and swelling over the majority of his head, as well as ongoing headaches and difficulty sleeping. Goodwyn, his mother and sister, and Haynes testified Goodwyn's demeanor after the incident changed from a young man who enjoyed concerts to someone scared and uncomfortable to be in crowded places.

Both parties presented expert testimony on the standard of care applicable to Belly Up. Goodwyn's expert opined the venue was understaffed with respect to security personnel the night of the incident, there was inadequate supervision of the security staff and the security staff was not properly trained. Goodwyn's expert also testified he believed Goodwyn's and Haynes's estimate of the length of time the fight lasted was overstated, and estimated the fight probably lasted between two and four minutes. Belly Up's rebuttal expert testified that the venue was adequately staffed, but conceded that if the version of events presented by Goodwyn was accepted, the conduct of Belly Up's security staff fell below the acceptable standard of care. He also testified that an adequate response to a fight would have occurred within one minute of its start.

After a four-day trial, the jury found in Goodwyn's favor, awarding him $90,000 in general damages and attributing 75 percent of the liability to Belly Up and 25 percent to the unknown assailants. Belly Up moved for JNOV, arguing Goodwyn failed to

4

introduce any evidence showing Belly Up's conduct caused the harm to Goodwyn.[1]  The trial court agreed that no substantial evidence was presented to support the jury's verdict on the element of causation, granted Belly Up's motion for JNOV and entered judgment in favor of Belly Up.

## DISCUSSION

The court may grant a JNOV " 'only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence in support.' " (*Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 770, quoting *Sweatman v. Department of Veterans Affairs* (2001) 25 Cal.4th 62, 68.)  The trial court "cannot weigh the evidence [citation], or judge the credibility of witnesses.  [Citation.]  If the evidence is conflicting or if several reasonable inferences may be drawn, the motion for [JNOV] should be denied." (*Hauter v. Zogarts* (1975) 14 Cal.3d 104, 110.)  " 'As in the trial court, the standard of review [on appeal] is whether any substantial evidence—contradicted or uncontradicted—supports the jury's conclusion.' [Citation.]" (*Cabral*, at p. 770.)

To establish Belly Up's negligence, Goodwyn was required to show Belly Up owed a duty to Goodwyn, breached that duty and the breach was the cause of that injury. (*Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200, 1205.)  The duty of a tavern keeper to protect its patrons from injury by third parties arises in a number of circumstances,

---

[1]     Belly Up also moved in the alternative for a new trial on the ground that the evidence was insufficient to justify the jury's verdict and that the award of damages was excessive.  The trial court denied the motion as moot in light of its ruling on the JNOV.

5

including the tavern keeper's failure to " 'stop a fight as soon as possible after it start[s].' " (*Saatzer v. Smith* (1981) 122 Cal.App.3d 512, 518.)  Belly Up does not dispute that it owed a duty to Goodwyn and that Goodwyn presented adequate evidence of a breach of this duty.  Belly Up argues only that Goodwyn did not present sufficient evidence that its breach—including failure to timely respond to the fight once it began—caused Goodwyn's injuries.

A plaintiff is not required to establish causation with certainty.  Instead, the plaintiff must show that that the defendant's conduct was a " 'substantial factor' in bringing about the injury."  (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 774 (*Saelzler*).)  More than "abstract negligence unconnected to the injury" is required. (*Noble v. Los Angeles Dodgers, Inc.* (1985) 168 Cal.App.3d 912, 916.)  The question of what would have happened had the defendant acted otherwise, however, by its nature involves an element of assumption.  "Causation is generally a question for the jury unless reasonable persons could not dispute the absence of causation, in which case it may be treated as a question of law."  (*Lucas v. County of Los Angeles* (1996) 47 Cal.App.4th 277, 289.)

Although there was contradictory evidence presented with respect to Belly Up's response to the altercation, the jury heard testimony from which it could reasonably conclude that Belly Up staff was aware, or should have been aware, of the fight but failed to timely respond.  Three witnesses stated that the fight lasted approximately 10 minutes and that Belly Up's security guards never responded, with the fight ending only when the perpetrators eventually walked away.  Although Belly Up presented evidence that its staff

6

broke up the fight, its witnesses did not directly refute Goodwyn's evidence concerning the length of the fight. While the bartender stated Phillips responded to the fight less than one minute after the bartender noticed the physical altercation, neither the bartender nor Phillips testified as to how long the altercation had been going on when they noticed it. Belly Up's own expert testified that if Goodwyn's, Haynes's and Handy's versions of events were believed, then Belly Up was "laying down on the job," and security should have responded to the fight within 60 seconds of it erupting.

Unlike *Saelzler* and *Nola M. v. University of Southern California* (1993) 16 Cal.App.4th 421 (*Nola M.*), where causation was held to be tenuous or speculative, the facts here provide the requisite "substantial evidence" of causation.[2] Belly Up's failure to respond at all to the fight, or failure to respond in a timely manner, supports an inference that this conduct was a substantial factor resulting in Goodwyn's injuries. It was reasonable for the jury to find that had Belly Up's staff intervened (at all, or earlier) the

---

[2]    In *Saelzler*, the California Supreme Court held that summary judgment was proper where the plaintiff failed to adequately show that an apartment complex owner's failure to provide certain security measures was a substantial cause of her assault by unknown assailants. The court concluded the plaintiff's evidence "merely shows the speculative possibility that additional daytime security guards and/or functioning security gates *might* have prevented the assault." (*Saelzler*, *supra*, 25 Cal.4th at p. 781, italics added.) Likewise, in *Nola M.*, the court found the plaintiff failed to present evidence that increased security measures by the defendant university could have prevented a sexual assault of the plaintiff that occurred on campus. (*Nola M., supra*, 16 Cal.App.4th at pp. 436-439.) In both of these cases, the causal link between the injury and the property owner's breach of duty was more speculative than the link between Belly Up's conduct (*i.e.*, failing to stop the fight as soon as possible) and Goodwyn's injuries.

injuries would have been lessened or prevented altogether.  The trial court erred by overturning the jury's verdict.[3]


# DISPOSITION

The judgment is reversed with directions to reinstate the jury verdict and enter judgment accordingly.  Plaintiff is awarded costs on appeal.


McCONNELL, P. J.

WE CONCUR:


O'ROURKE, J.


IRION, J.

---

[3]     In its respondent's brief, Belly Up requests we direct the trial court to reconsider its motion for a new trial, which was denied as moot in light of the trial court's ruling on the JNOV.  Belly Up, however, has not appealed the court's ruling.